IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| JONATHAN J. POLLARD, | ) |
| | ) |
| Defendant. | ) |

Criminal No. 86-0207 (TFH)

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO ADD TO LIST OF DEFENSE COUNSEL
AUTHORIZED TO ACCESS SEALED DOCKET MATERIALS
<u>PURSUANT TO PROTECTIVE ORDER</u>**

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
**1717 Pennsylvania Avenue, N.W.**
**Washington, D.C.  20006**
**(202) 452-7373**
**-and-**
**101 Park Avenue**
**New York, New York  10178-0061**
**(212) 696-6000**

Defendant Jonathan J. Pollard, through his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion to add his current counsel, Eliot Lauer and Jacques Semmelman, to the list of defense counsel authorized to access Sealed Docket Materials pursuant to the Protective Order in this case.

## Introduction

Mr. Pollard, incarcerated since 1985, has recently applied for parole. A portion of his parole file has been made available to counsel for review. The parole file contains Form 792, submitted by the government in 1987, that invokes the Declaration of then-Secretary of Defense Caspar W. Weinberger (the "Weinberger Declaration"), as grounds for denying parole. The Form 792 submission, and its reliance on the Weinberger Declaration, were acknowledged in 1995 in a pre-hearing assessment prepared by Parole Commission staff. The Weinberger Declaration remains largely under seal pursuant to the Protective Order in this case. No attorney for Mr. Pollard has seen the sealed portions of the Weinberger Declaration since Mr. Pollard was sentenced in 1987.

Although decades old, the Form 792 and the pre-hearing assessment are still in Mr. Pollard's parole file. They will soon be reviewed and considered by the Parole Commission in the context of Mr. Pollard's pending parole application. In order for counsel to argue effectively in favor of parole, counsel has a "need to know" what is in the Weinberger Declaration and several related filings. Counsel has the necessary security clearance. Counsel satisfies all of the requirements of the Protective Order for access to these materials. The Motion should be granted.

### Background

Mr. Pollard was arrested November 21, 1985 and charged in a criminal complaint with violating 18 U.S.C. §§ 794(a) and 793(e). He has been incarcerated continuously since that day.

On June 4, 1986, pursuant to a Plea Agreement, Mr. Pollard pleaded guilty to one count of conspiracy to commit espionage, in violation of 18 U.S.C. § 794(c).

On October 24, 1986, the Court (Hon. Aubrey E. Robinson) entered the Protective Order. (Ex. 3)[1]

### The Sealed Docket Materials

Pursuant to the Protective Order, the government and the defense each submitted sentencing memoranda and related materials for review by a designated Court Security Officer. The Court Security Officer redacted those portions of the memoranda and other materials that, in his view, contained classified information. The *redacted* versions of these memoranda and materials have long been in the public record. However, the portions deemed by the Court Security Officer to be classified were placed under seal (the "Sealed Docket Materials"), and have remained under seal since then. (Lauer Decl. ¶ 7)

The following documents were redacted in this manner:

- Declaration of Secretary of Defense Caspar W. Weinberger, dated "December __, 1986" and filed with the Court Security Officer on January 9, 1987 (the "Weinberger Declaration") (Ex. 4);

- Defendant Jonathan J. Pollard's First Memorandum in Aid of Sentencing (undated) (Ex. 5);

- Defendant Jonathan J. Pollard's Second Memorandum in Aid of Sentencing, served February 27, 1987 (Ex. 6);

---

[1] Citations in the form "Ex. __" are to the exhibits to the Declaration of Eliot Lauer dated December 19, 2013 and filed herewith.

- Government's Reply to Defendant's Sentencing Memorandum, served March 3, 1987  (Ex. 7); and

- Minutes of sentencing dated March 4, 1987, at p. 57 (Ex. 8).

Redacted versions of these documents are on file in the Court's docket.

On March 4, 1987, Mr. Pollard was sentenced to life in prison.  Since then, *no attorney for Mr. Pollard has been allowed access to any of the Sealed Docket Materials.*  (Lauer Decl. ¶ 11)[2]

## Reason For This Motion

On December 12, 2013, Mr. Pollard filed an application for parole.  (Ex. 7).  There will be a parole hearing in the near future.  *See* 28 C.F.R. 2.11.

Counsel's purpose in seeking access to the Sealed Docket Materials is to respond to certain statements by the government contained in Mr. Pollard's file maintained by the United States Parole Commission (the "Parole Commission" or "USPC").  Counsel proposes to examine the Sealed Docket Materials in a secure government vault, under strict conditions of confidentiality.  (Lauer Decl. ¶ 13)

## The Parole File and the "Need to Know"

On August 14, 2013, in anticipation of filing his parole application, Mr. Pollard served a Freedom of Information Act request on the Parole Commission, seeking a copy of his complete parole file.  In response, on September 30, 2013, the Parole Commission produced a *portion* of Mr. Pollard's parole file (the "Parole File").  (Lauer Decl. ¶ 14)

---

[2] On November 8, 2012 and April 16, 2013, in connection with litigation instituted by Mr. Pollard and his counsel under the Freedom of Information Act, the government unredacted minimal portions of the Sealed Docket Materials. Apart from that very slight disclosure, it remains the case that no attorney for Mr. Pollard has been allowed access to the Sealed Docket Materials since 1987.

The Parole File contains Form 792, submitted to the Parole Commission on April 7, 1987 by Assistant U.S. Attorney Charles S. Leeper.  (Ex. 9)  As part of its pre-printed language, Form 792 states: "This report must be completed for the use of the U.S. Parole Commission in all cases in which the defendant has received a prison term of more than one year.  *It is an essential source of information for parole decision-making*."  (Ex. 9 at p. 1) (emphasis added).

The Form 792 in the Parole File opposed release on parole, and specifically invoked the Weinberger Declaration as justification for denying Mr. Pollard parole :

> *In order to demonstrate for the Court the degree of damage to the national security caused by defendant's conduct*, the government submitted, in camera, *an affidavit by Secretary of Defense Caspar W. Weinberger*.  The Weinberger Affidavit was itself classified Top Secret (Code-word), *because of the sensitivity of the documents compromised by defendant and discussed therein* . . .. At the time of sentencing, Chief Judge Robinson specifically referred to the damage to U.S. national security caused by defendant *which was described in the classified Weinberger Affidavit as a basis for the life sentence which the Court imposed*.

(Ex. 9  at pp. 2-3) (emphasis added).

In 1995, as the Initial Hearing date approached, the Parole Commission staff prepared a draft Pre-Hearing Assessment (Ex. 10), as well as an Addendum specifically "based upon the receipt of a form 792 from the U.S. Attorney's Office[.]"  (Ex. 11)  (the "Addendum").  The Addendum stated that "[t]he government in camera submitted a document, specifically an affidavit by Secretary of Defense Caspar W. Weinberger which was in itself classified as top secret.  It was classified in this manner because it contained sensitive information . . .. *The sentencing judge referred to the damage to national security described in the classified Weinberger affidavit as a basis for the life sentence imposed*."  (Ex. 11  at p. 1) (emphasis added).

These materials are still part of the file, and the Form 792 will soon be reviewed and considered by the Parole Commission as "an essential source of information" in connection with

the parole application.  (Ex. 9 at p. 1)   So long as Mr. Pollard's counsel is denied access to the

Sealed Docket Materials, and specifically the Weinberger Declaration, Mr. Pollard is being

unfairly deprived of the ability to argue effectively in favor of parole.

This lack of access is all the more troubling because in 2002, in a published interview

with respected journalist and author Edwin Black ("IBM and the Holocaust"), Mr. Weinberger

described the Pollard case as "a very minor matter, but made very important."  He reiterated

during the interview that "the Pollard matter was comparatively minor.  It was made far bigger

than its actual importance."  (Ex. 12)

In a Declaration submitted in support of this Motion, Dr. Lawrence J. Korb, a prominent

former U.S. government official, has revealed that the Weinberger Declaration cannot be relied

upon.  Dr. Korb, who served as Assistant Secretary of Defense under Mr. Weinberger, states:

> During my time at the Department of Defense, I worked closely with Mr.
> Weinberger.  I am well aware of his negative opinions about the impact and
> influence of the State of Israel on U.S. policy.… I state with confidence that the
> severity of Mr. Pollard's sentence appears to be the result of Mr. Weinberger's
> almost visceral dislike of the impact that Israel has on U.S. foreign policy.

(Declaration of Dr. Lawrence J. Korb, at ¶¶ 9, 12)

This statement by a former senior U.S. government official who worked closely with Mr.

Weinberger, and Mr. Weinberger's own admissions to Mr. Black, raise serious questions about

the credibility of the Weinberger Declaration and its contents.

## Counsel Has Appropriate Security Clearances

In late 2000 and early 2001, respectively, after thorough background investigations,

Messrs. Lauer and Semmelman were informed by the Department of Justice that they had been

approved for the appropriate "Top Secret" security clearances necessary to see the Sealed Docket

Materials.  (Lauer Decl. ¶ 24)  They executed the required documents and received the

clearances.  (Ex. 1)  They were later informed, in a letter from the Court Security Officer dated

August 3, 2001, that they had also been determined to be SCI-eligible, provided they had a "need to know." (Ex. 2)  At that time, counsel's purpose in seeking access to the Sealed Docket Materials was in connection with efforts to obtain executive clemency for Mr. Pollard. (Lauer Decl. ¶ 24)  When they were unable to gain access to the Sealed Docket Materials on a consensual basis, they filed a motion in the U.S. District Court, under the terms of the Protective Order, asking the Court to grant them access. (Lauer Decl. ¶ 24)

By Order dated January 12, 2001, the District Court (Hon. Norma Holloway Johnson) denied the motion.  Thereafter, based upon information subsequently disclosed by the government, counsel filed a motion to modify the prior order.  The District Court (Hon. Thomas F. Hogan) denied the motion.  *See United States v. Pollard*, 290 F. Supp. 2d 165 (D.D.C. 2003).

On appeal, in a 2-1 decision, the United States Court of Appeals for the District of Columbia Circuit vacated the orders below, ruling that the District Court lacked subject matter jurisdiction to decide the motion because clemency is purely a presidential function, in which a court may play no role due to the separation of powers.  *See United States v. Pollard*, 416 F.3d 48, 57 (D.C. Cir. 2005), *cert. denied*, 574 U.S. 1021 (2006).

The present motion for access to the Sealed Docket Materials for the purpose of responding to the Form 792 and arguing in favor of parole does not implicate the separation of powers, and therefore does not run afoul of the letter or the spirit of the Court of Appeals' decision.  To the contrary, that decision leaves open the possibility of access for a reason other than executive clemency (such as parole).

In sum, counsel has satisfied each of the requirements for access to the Sealed Docket Materials.  Basic fairness mandates access so that counsel may respond effectively to the statements in the Form 792.  The Motion should be granted.

### Argument

## COUNSEL HAS SATISFIED ALL REQUIREMENTS
## FOR ACCESS TO THE SEALED DOCKET MATERIALS
## UNDER THE PROTECTIVE ORDER

Under the Protective Order (Ex. 3), accessing classified materials involves three steps: (i) undergoing a background investigation and receiving an appropriate security clearance from the government; (ii) executing a non-disclosure agreement; and (iii) obtaining Court approval, which, under governing regulations, requires showing a "need-to-know." 28 C.F.R. 17.41(a)(2).

Counsel has undergone the background investigation, which resulted in the issuance of "Top Secret" security clearance, and which the government has further admitted "will support SCI access" upon showing "need to know" and undergoing a briefing. (Ex. 2)  There is therefore no concern whatsoever about the integrity or trustworthiness of counsel. *See* 28 C.F.R. 17.41(b) (security clearance granted only if government's investigation indicates "strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment").  Counsel is willing and able to undergo the required briefing immediately. (Lauer Decl. ¶ 3)

Counsel has executed the non-disclosure agreement. (Ex. 1)

Thus, the only issue that is even potentially in dispute is whether counsel has a "need-to-know."  The phrase "need-to-know" does not appear in the Protective Order.  It is defined by Executive Order 12958:  "need-to-know" means "that a prospective recipient requires access to specific classified information in order to perform or *assist in a lawful and authorized governmental function*." 75 Fed. Reg. 707 at § 6.1(dd) (Dec. 29, 2009) (emphasis added).[3]

Nothing in this broad definition limits access solely to government personnel. *See Stillman v. Dep't of Defense*, 209 F. Supp. 2d 185, 191 (D.D.C. 2002) (government admittedly

---

[3] This definition of "need-to-know" is broader than the definitions used in other regulatory areas.  For example, as part of its "need-to-know" definition, the Department of Energy requires that access be "necessary in the performance of official, contractual, or access permit duties of employment[.]"  10 C.F.R. 1016.3(p).

gave private counsel access to classified materials because counsel was "performing a lawful and authorized function by negotiating" with government on behalf of client), *rev'd on other grounds*, 319 F.3d 546 (D.C. Cir. 2003).

Parole is a lawful and authorized governmental function. Here, in its Form 792, which "is an essential source of information for parole decision-making" (Ex. 9 at p. 1), the government elected to rely heavily on the Weinberger Declaration as its justification for denial of parole. (Ex. 9 at pp. 2-3). The Parole Commission staff, in its 1995 Pre-Hearing Assessment Addendum, specifically noted that Form 792 invoked the Weinberger Declaration. (Ex. 11 at pp. 4-5)

Notwithstanding the age of these materials, they are still in the file and will soon be reviewed by the Parole Commission when it considers Mr. Pollard's recently-filed application for parole. It would be manifestly unjust to prevent security-cleared counsel for Mr. Pollard from seeing the Weinberger Declaration in order to challenge the Form 792 and argue in favor of parole.[4]

In *Franklin v. Shields*, 569 F.2d 784 (4th Cir. 1977), *cert. denied*, 435 U.S. 1003 (1978), the Fourth Circuit held that due process requires that evidence being considered in connection with parole must be made available to the prisoner.[5] The court cited *Greene v. McElroy*, 360 U.S. 474 (1959) for the principle "that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Franklin*, 569 F.2d at 794 (*quoting Greene*, 360 U.S. at 496). The

---

[4] Counsel does not intend to disclose to the Parole Commission the contents of the Weinberger Declaration. Rather, by obtaining access, counsel will be in a position to make authoritative statements that respond to the government's arguments in Form 792. (Lauer Decl. ¶ 28)

[5] Mr. Pollard is incarcerated in FCI Butner, NC, which is in the Fourth Circuit,

Fourth Circuit held that "*[t]his principle is applicable to the prisoner who is eligible for parole*. Because his interest in liberty is at stake, he stands to suffer serious injury if he is denied parole on the basis of inaccurate or incomplete information. Since the data on which the Board acts is not developed through an open adversary confrontation, *its accuracy cannot be assured unless the prisoner has access to the relevant information in his file.*" *Franklin*, 569 F.2d at 794-95 (emphasis added).

While *Franklin* involved state parole proceedings, the court's reasoning applies to federal parole as well, since basic due process must be accorded in federal parole proceedings. *See Childs v. U.S. Bd. of Parole*, 511 F.2d 1270, 1278 (D.C. Cir. 1974) ("If the Board's decision is negative, the prisoner is deprived of conditional liberty…. it follows that the parole decision must be guided by minimal standards of due process of law which at the same time reflect the need of the parole system to function consistently with its purposes and responsibilities."). *See also Morrissey v. Brewer*, 408 U.S. 471 (1972) (due process applies in parole revocation proceedings). Basic due process requires that counsel for Mr. Pollard be accorded access to the Weinberger Declaration. The government's decision to rely on the Weinberger Declaration in its Form 792 gives rise to a "need to know" so that counsel may respond effectively to the Form 792 in arguing in support of Mr. Pollard's application for parole. Mr. Pollard's security-cleared counsel should be afforded an opportunity to see the Weinberger Declaration (and the other Sealed Docket Materials) under strict conditions of confidentiality.

## Conclusion

The Court should enter an Order adding Mr. Pollard's current counsel, Eliot Lauer and Jacques Semmelman, to the list of persons authorized to access the Sealed Docket Materials pursuant to the Protective Order.

Dated: December 20, 2013

Respectfully submitted,

CURTIS, MALLET-PREVOST,
    COLT & MOSLE LLP

Eliot Lauer (D.C. Bar No. 203786)

Jacques Semmelman
(Admitted pro hac vice)

1717 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 452-7373
            -and-
101 Park Avenue
New York, New York  10178-0061
(212) 696-6000

Attorneys for Jonathan J. Pollard